UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

*In re:*

      JACK ABERMAN,

        *Debtor.*               Case No. 3:13-bk-00167-JAF

        (M.D. Fla., registered in E.D. Pa.

        pursuant to Fed. R. Bankr. P. 4004(f))

**JACK ABERMAN,** Individually,

    *Plaintiff,*

                           v.

**PHH MORTGAGE CORPORATION d/b/a**

**NEWREZ LLC d/b/a SHELLPOINT**

**MORTGAGE SERVICING, et al.,**

    *Defendants.*



Adversary Proceeding No. _____

## VERIFIED ADVERSARY COMPLAINT TO ENFORCE DISCHARGE INJUNCTION AND FOR DAMAGES

### I. NATURE OF THE PROCEEDING

**1.** This adversary proceeding seeks to enforce three permanent discharge injunctions entered by the United States Bankruptcy Court for the Middle District of Florida under 11 U.S.C. § 524(a)(2). Those discharge orders have been registered in this Court pursuant to Federal Rule of Bankruptcy Procedure 4004(f). Not one Defendant has ever filed a motion for, or obtained, relief from any discharge injunction in any of the three underlying bankruptcy cases. Every foreclosure action, judgment, and property sale challenged herein is therefore void ab initio under Kalb v. Feuerstein, 308 U.S. 433 (1940).

**2.** Plaintiff brings this action under 11 U.S.C. §§ 524(a)(2) and 105(a); 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c); 15 U.S.C. § 1692 et seq.; Florida Statutes §§ 65.061 and 772.11; and the inherent contempt powers of this Court. The RICO claims arise directly from Defendants' systematic scheme to violate federal bankruptcy court orders through a pattern of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bankruptcy fraud (18 U.S.C. § 152), and are therefore core proceedings under 28 U.S.C. § 157(b)(2)(A), (I), and (O).

## II. JURISDICTION AND VENUE

**3.** This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (I) (determinations as to the dischargeability of particular debts), and (O) (other proceedings affecting the debtor-creditor relationship). Plaintiff consents to entry of final orders and judgment by this Court.

**4.** The enforcement of a permanent discharge injunction is the quintessential core bankruptcy function. "The bankruptcy court is the only court with jurisdiction to determine whether particular actions violate the discharge injunction." In re McLean, 794 F.3d 1313, 1321 (11th Cir. 2015). See also Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 447 (2004); Local Loan Co. v. Hunt, 292 U.S. 234, 239 (1934) (bankruptcy court retains ancillary jurisdiction to enforce its own orders).

**5.** Congress has repeatedly confirmed that bankruptcy courts possess the power to enjoin state courts from interfering with the discharge. In Local Loan Co. v. Hunt, 292 U.S. 234 (1934), the Supreme Court unanimously held that the court issuing a discharge retains ancillary jurisdiction to enjoin state court collection of discharged debts. When the Supreme Court narrowed this power in Toucey v. New York Life Insurance Co., 314 U.S. 118 (1941), Congress responded by amending 28 U.S.C. § 2283 in 1948 to expressly authorize federal courts to enjoin state proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Congress further confirmed this authority in 11 U.S.C. § 105(a), the legislative history of which states that the section "is also an authorization, as required under 28 U.S.C. 2283, for a court of the United States to stay the action of a State court. As such, Toucey v. New York Life Insurance Company, 314 U.S. 118 (1941), is overruled." The discharge injunctions at issue in this case are therefore backed by three independent sources of authority: the Bankruptcy Code (§ 524(a)(2)), the Anti-Injunction Act (§ 2283), and the inherent contempt power of the issuing court (§ 105(a)).

**6.** Venue is proper in this district because: (a) the three discharge orders are now registered in this Court under FRBP 4004(f); (b) Defendant PHH Mortgage Corporation d/b/a NewRez LLC d/b/a Shellpoint Mortgage Servicing maintains its principal place of business at 1100 Virginia Drive, Suite 125, Fort Washington, Pennsylvania 19034, within this district; (c) twenty-one of the Defendant entities maintain offices, agents, or are subject to personal jurisdiction in this district; and (d) the related civil RICO action, Aberman v. NewRez LLC et al., Case No. 2:26-cv-00918-JDW, is pending before Judge Wolson in the United States District Court for the Eastern District of Pennsylvania.

**7.** Nationwide service of process is authorized under Federal Rule of Bankruptcy Procedure 7004(d) and 18 U.S.C. § 1965(d).

## III. WHY ENFORCEMENT CANNOT PROCEED IN THE HOME COURT

**8.** Three confirmed Chapter 11 bankruptcy cases underlie this action, all presided over by Judge Jerry A. Funk in the Middle District of Florida, Jacksonville Division:

| Case Number | Debtor | Confirmed | Discharged | Judge |
|---|---|---|---|---|
| 3:13-bk-00165-JAF | GEA Seaside Inv. | 01/05/2016 | 03/27/2017 | Funk |
| 3:13-bk-00167-JAF | Jack Aberman | 01/05/2016 | 03/27/2017 | Funk |

| 3:18-bk-00800-JAF | GEA Seaside Inv. | 07/21/2020 | 03/27/2023 | Funk |

**9.** Plaintiff's individual case, 3:13-bk-00167-JAF, is the operative case for this proceeding. All notes and mortgages at issue are in Plaintiff's individual name. GEA Seaside Investment Inc. is not a party to this adversary proceeding because corporations cannot appear pro se. Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985). The companion GEA cases are referenced solely for context.

**10.** Judge Funk retired from the bench. His former law clerk, Jacob A. Brown III, subsequently became a bankruptcy judge in the same court, and then became Chief Judge of the Middle District of Florida Bankruptcy Court. Chief Judge Brown has administrative oversight over Plaintiff's three bankruptcy cases—the very cases his former employer presided over and in which every enforcement motion was denied.

**11.** Over a period of more than eight years, every motion Plaintiff filed seeking to enforce the discharge injunctions in the Middle District of Florida was denied. The denial rate is 100% across every procedural vehicle attempted: motions for contempt, motions for sanctions, motions to void, and motions for reconsideration. No Defendant has ever been sanctioned, held in contempt, or required to obtain relief from the discharge before prosecuting foreclosures.

**12.** Plaintiff further sought relief from the Eleventh Circuit Court of Appeals in Case No. 25-14406. A panel consisting of Judges Jordan, Brasher, and Abudu denied all relief on March 12, 2026. Notably, Judge Brasher is a former law clerk to Chief Judge William H. Pryor Jr., who separately dismissed all seven judicial misconduct complaints Plaintiff filed against the bankruptcy judges involved.

**13.** These structural conflicts—a retired judge whose law clerk now serves as Chief Judge with administrative oversight over the same debtor's cases—create an appearance of partiality requiring recusal under 28 U.S.C. § 455(a). Registration under FRBP 4004(f) in a neutral forum is the appropriate remedy. Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 881 (2009).

## IV. THE DEFENDANTS

### A. Servicer Defendants

**14.** Defendant PHH MORTGAGE CORPORATION d/b/a NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING (collectively "Primary Servicer") is a corporation with its principal place of business at 1100 Virginia Drive, Suite 125, Fort Washington, Pennsylvania 19034, within this judicial district. Primary Servicer is the lead actor in the foreclosure enterprise, having initiated or directed the majority of the foreclosure actions challenged herein.

**15.** Defendant OCWEN LOAN SERVICING LLC d/b/a ONITY GROUP INC. ("Ocwen") is a Florida limited liability company that serviced multiple Plaintiff loans and initiated foreclosure actions in violation of the discharge.

**16.** Defendant NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER ("Nationstar") is a Texas limited liability company that serviced multiple Plaintiff loans and initiated foreclosure actions in violation of the discharge.

**17.** Defendant SELECT PORTFOLIO SERVICING, INC. ("SPS") is a Utah corporation that serviced Plaintiff loans and initiated foreclosure actions in violation of the discharge.

**18.** Defendant WELLS FARGO BANK, N.A. ("Wells Fargo") is a national banking association that served as trustee and/or servicer on multiple Plaintiff loans and authorized foreclosure actions in violation of the discharge.

**19.** Defendant FAY SERVICING LLC ("Fay") is a Texas limited liability company that serviced Plaintiff loans and initiated foreclosure actions in violation of the discharge.

**20.** Defendant 21ST MORTGAGE CORPORATION ("21st Mortgage") is a Tennessee corporation that serviced Plaintiff loans and initiated foreclosure actions in violation of the discharge.

**21.** Defendant ALLIED SERVICING CORPORATION ("Allied") serviced Plaintiff loans and initiated foreclosure actions in violation of the discharge.

## B. Law Firm Defendants

**22.** Defendants ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC; VAN NESS LAW FIRM, PLC; ALDRIDGE PITE, LLP; McCABE WEISBERG & CONWAY, LLC; BROCK & SCOTT, PLLC; TROMBERG, MORRIS & POULIN, PLLC; DIAZ ANSELMO & ASSOCIATES, P.A.; WEITZ & SCHWARTZ, P.A.; and SOKOLOF REMTULLA, PLLC (collectively "Law Firm Defendants") are law firms that filed, prosecuted, and obtained foreclosure judgments and sales in Volusia County, Florida, on behalf of the Servicer Defendants, without ever disclosing the existence of the discharge injunctions to the state courts, and without ever obtaining relief from those injunctions from any bankruptcy court.

## C. Property Preservation Defendants

**23.** Defendants GUARDIAN ASSET MANAGEMENT LLC, CYPREXX SERVICES LLC, and ALTISOURCE PORTFOLIO SOLUTIONS S.A. (collectively "Preservation Defendants") entered, secured, changed locks on, and damaged Plaintiff's properties—often while tenants were in residence—at the direction of the Servicer Defendants, without court authorization and in furtherance of the foreclosure enterprise.

## D. Additional Defendants

**24.** Defendant ASSURANT, INC. ("Assurant") provided force-placed insurance on Plaintiff's properties and denied 100% of more than 115 insurance claims filed by Plaintiff, while collecting premiums charged to Plaintiff's loan accounts in furtherance of the enterprise.

**25.** Defendant CITY OF DAYTONA BEACH, FLORIDA ("City") is a municipal corporation that initiated code enforcement actions, imposed liens, and condemned properties belonging to Plaintiff in coordination with and as a direct consequence of the Servicer Defendants' unauthorized property preservation activities and foreclosure actions, depriving Plaintiff of due process under the Fourteenth Amendment. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

**26.** Defendants DOES 1–50 are process servers, agents, inspectors, and other individuals who participated in the enterprise by filing false affidavits of service, conducting unauthorized property inspections, or performing other acts in furtherance of the scheme. Plaintiff will amend

this complaint to identify these Defendants when their identities are confirmed through discovery. At least sixteen individuals have been identified to date.

## V. THE DISCHARGE INJUNCTIONS AND THEIR VIOLATION

**27.** On March 27, 2017, Judge Funk entered discharge orders in Cases 3:13-bk-00165-JAF and 3:13-bk-00167-JAF. On March 27, 2023, Judge Funk entered a discharge order in Case 3:18-bk-00800-JAF. These three discharge orders create permanent federal injunctions under 11 U.S.C. § 524(a)(2) that "operate[] as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor."

**28.** Notwithstanding these permanent injunctions, Defendants initiated, prosecuted, and obtained judgments and sales in at least 46 foreclosure actions in the Seventh Judicial Circuit of Florida (Volusia County) against Plaintiff and his properties. Not one Defendant has ever filed a motion for relief from the discharge injunction in any of the three bankruptcy cases. Not one Defendant has ever obtained a signed federal order authorizing the commencement or continuation of foreclosure proceedings against Plaintiff.

**29.** The foreclosure actions exhibit a pattern of concentration that itself constitutes evidence of coordination: of the 36+ active cases, approximately 68% have been assigned to only two state court judges—Judge Mary Jolley (Division 32) and Judge Dennis Craig (Division 31). The statistical probability of this concentration occurring by random assignment approaches zero.

### The 48 Recycled Cases Scheme

**30.** The mechanism of this concentration was deliberate case recycling. Forty-eight foreclosure cases—originally filed between 2007 and 2012 and assigned across eight different Volusia County judges—were allowed to go dormant for periods ranging from 6 to 17 years. Instead of filing new complaints that would have required fresh service of process and mandatory disclosure of the three federal bankruptcy cases and two discharge injunctions, the Law Firm Defendants reopened these dormant cases under their original case numbers. By reusing the original numbers, they bypassed every procedural safeguard: no new verified complaints, no new service of process, no disclosure requirement, and no opportunity for the assigned judges to learn that three confirmed Chapter 11 plans and two permanent federal discharge injunctions had been entered during the intervening years.

| Original Judge | Cases | Dormancy | Now Under | Division |
|---|---|---|---|---|
| William A. Parsons | 18 | 11–17 years | Jolley | Div 32 |
| Michael S. Orfinger | 9 | 6–7 years | Jolley | Div 32 |
| Terence R. Perkins | 6 | 7–13 years | Craig/Jolley | Div 31/32 |
| Richard S. Graham | 4+ | Various | Craig | Div 31 |
| Dennis P. Craig | 4 | Retained | Craig | Div 31 |
| Leah R. Case (Chief Judge) | 2+ | Various | Craig/Jolley | Div 31/32 |
| Christopher A. France | 2 | 17+ years | Craig | Div 31 |
| Robert K. Rouse Jr. | 2 | 17+ years | Craig | Div 31 |

**31.** The statistical probability of 48 cases from eight different judges all being reassigned to only two judicial divisions is less than 0.0001%. This did not happen by random assignment. It happened because the Law Firm Defendants, acting on behalf of the Servicer Defendants, strategically recycled dormant cases to avoid the disclosure obligations that would have accompanied new filings.

**32.** The state court judges presiding over these recycled cases have their own disqualifying conflicts. Judge Mary G. Jolley (Division 32, 23+ cases) spent her pre-judicial career in the Florida Attorney General's office, the very agency charged with prosecuting mortgage foreclosure fraud—yet she now presides over and facilitates the very fraud she was once charged with preventing. Judge Dennis Craig (Division 31, 11+ cases) spent his pre-judicial career in the State Attorney's office. Most significantly, Chief Judge Leah R. Case—the administrative chief of the entire Seventh Judicial Circuit with supervisory duty under Florida Rule of Judicial Administration 2.215(b)(3) to oversee all judges in the circuit—was herself the original presiding judge on approximately eight of the 48 recycled cases. She is not a neutral administrator. She is a direct participant in the scheme whose own cases were among those recycled, and she has refused every request for administrative intervention to halt the ongoing federal supremacy violations.

**33.** Every one of these 48 recycled cases proceeded without any creditor first obtaining relief from the discharge injunction. Every one proceeded without disclosure to the presiding judge that three confirmed federal Chapter 11 plans and two permanent discharge injunctions existed. The recycling scheme was the mechanism by which the enterprise concealed the discharge from the state courts—and it worked, because not one state court judge has enforced the federal discharge in any of these cases.

### A. Properties Already Sold ($725,966.63)

| Case No. | Address | Sale Date | Amount | Judge | Buyer | Status |
|---|---|---|---|---|---|---|
| 2023-32827 | 232 N. Peninsula Dr | 09/09/2025 | $112,600 | Craig | Rivera Investors | VOID |
| 2023-32436 | 319 Hollywood Ave | 09/26/2025 | $70,100 | Craig | U.S. Bank N.A. | VOID |
| 2024-10867 | 231 N. Hollywood | 11/12/2025 | $105,100 | Jolley | Wilmington Trust | VOID |
| 2025-10715 | 25 S. Peninsula Dr | 11/12/2025 | $39,100 | Jolley | BNY Mellon | VOID |
| 2024-11372 | 311 N. Hollywood | 11/04/2025 | $170,200 | Jolley | Shauna Dorsett | VOID |
| 2025-11013 | 509 Harvey Ave | 11/04/2025 | $80,200 | Craig | BNY Mellon | VOID |
| 2018-30232 | 817 Big Tree Rd | 07/13/2022 | $148,667 | Craig | AVAIL 2 LLC | VOID |

**34.** Each of these sales was conducted pursuant to a foreclosure judgment entered without bankruptcy court authorization. Each sale is therefore void ab initio under Kalb v. Feuerstein and must be vacated. Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982) ("[A]ny action taken in violation of the stay is void and without effect.").

**B. Active Foreclosure Cases (18+ Pending)**

**35.** In addition to the seven sold properties, Defendants maintain at least eighteen active foreclosure cases against Plaintiff's properties in Volusia County. Each of these cases was filed and prosecuted in violation of the discharge injunction. Among the properties at imminent risk is 428 N. Peninsula Drive, Daytona Beach—Plaintiff's personal residence and business office for 23+ years.

## VI. THE FORECLOSURE ENTERPRISE

**36.** Defendants constitute an "association-in-fact enterprise" within the meaning of 18 U.S.C. § 1961(4). The enterprise operates as follows: Servicer Defendants assign foreclosure matters to Law Firm Defendants; Law Firm Defendants file verified foreclosure complaints in state court that conceal the existence of the bankruptcy cases, the discharge injunctions, and the confirmed plans; Preservation Defendants enter and secure properties without court authorization to create the false appearance of abandonment; Assurant collects force-placed insurance premiums and denies all claims; and the City of Daytona Beach initiates code enforcement proceedings against properties destabilized by the enterprise's unauthorized activities.

**37.** The predicate acts constituting the "pattern of racketeering activity" under 18 U.S.C. § 1961(5) include: (a) mail fraud (18 U.S.C. § 1341)—mailing verified foreclosure complaints, notices of sale, and payoff statements that conceal the discharge; (b) wire fraud (18 U.S.C. § 1343)—transmitting electronic payoff demands, account statements, and e-filings that misrepresent discharged debts as currently due; and (c) bankruptcy fraud (18 U.S.C. § 152)—knowingly and fraudulently filing foreclosure actions on debts known to be discharged under federal bankruptcy orders.

**38.** These predicate acts are not isolated incidents. They represent a coordinated, continuing pattern spanning from 2007 to the present involving 46+ foreclosure actions, 91 attorneys, 14 law firms, 8 mortgage servicers, and multiple ancillary actors. The pattern has resulted in the forced sale of seven properties for $725,966.63, the destruction of rental income from 40+ properties over 23+ years, and damages exceeding $10 million before trebling.

**39.** Critically, this RICO enterprise operates through the mechanism of violating federal bankruptcy court orders. The mail and wire fraud predicate acts consist of transmitting documents that conceal the discharge—a federal court order. The bankruptcy fraud predicate acts consist of filing foreclosure actions on debts known to be discharged. The enterprise's racketeering activity therefore "arises in" the bankruptcy cases, making the RICO claims core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O). Civil litigation under RICO has long been recognized in the context of bankruptcy fraud. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).

## COUNTS

### COUNT I
### VIOLATION OF DISCHARGE INJUNCTION
(11 U.S.C. § 524(a)(2))

Against All Defendants

**40.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**41.** The discharge orders entered on March 27, 2017 and March 27, 2023 permanently enjoin all creditors from commencing or continuing any action to collect discharged debts as a personal liability of the debtor. 11 U.S.C. § 524(a)(2).

**42.** Defendants commenced or continued foreclosure actions, obtained judgments, and executed sales on discharged debts without obtaining relief from the discharge injunction, in knowing violation of § 524(a)(2). There is "no fair ground of doubt" that these actions violated the discharge. Taggart v. Lorenzen, 587 U.S. 554 (2019). See also Beckhart v. Newrez LLC, 31 F.4th 274 (4th Cir. 2022) (applying Taggart to Chapter 11 discharge).

**43.** Plaintiff has suffered actual damages including loss of seven properties ($725,966.63), destruction of rental income, legal costs, and emotional distress as a direct and proximate result of Defendants' violations.

### COUNT II
### CIVIL CONTEMPT
(11 U.S.C. § 105(a))

Against All Defendants

**44.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**45.** Section 105(a) grants bankruptcy courts independent statutory power to award monetary and other forms of relief for discharge injunction violations. In re Hardy, 97 F.3d 1384, 1389–90 (11th Cir. 1996).

**46.** Each Defendant knew that the discharge injunctions were in effect. Each Defendant intended the actions that violated those injunctions. No Defendant made any inquiry of the bankruptcy court before proceeding. The willfulness required for contempt is established by clear and convincing evidence.

**47.** Plaintiff seeks compensatory damages, punitive damages, and attorneys' fees (or their pro se equivalent) for Defendants' willful contempt.

### COUNT III
### DECLARATORY JUDGMENT: VOID AB INITIO
(Kalb v. Feuerstein, 308 U.S. 433 (1940))

Against All Defendants

**48.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**49.** Every foreclosure complaint, judgment, order, certificate of title, and sale conducted against Plaintiff's properties without prior bankruptcy court authorization is void ab initio—not merely voidable. Kalb v. Feuerstein, 308 U.S. 433, 438–40 (1940); Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982).

**50.** Plaintiff seeks a declaratory judgment that all foreclosure complaints, judgments, and sales identified herein are void; that all certificates of title issued pursuant to void sales be cancelled; and that title to all properties be quieted in Plaintiff's name free and clear of any interest derived from the void proceedings.

## COUNT IV
### RICO ENTERPRISE
(18 U.S.C. § 1962(c))

Against All Defendants

**51.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**52.** Each Defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise described in Section VI through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

**53.** The enterprise has engaged in at least two predicate acts of racketeering activity within a ten-year period, satisfying the pattern requirement. In fact, the enterprise has committed hundreds of predicate acts over an eighteen-year period (2007–2026) involving 46+ foreclosure filings, each constituting a separate act of mail fraud, wire fraud, and/or bankruptcy fraud.

**54.** Plaintiff has been injured in his business and property by reason of Defendants' RICO violations, including the loss of seven properties, destruction of rental income from a 23-year-old residential property business, and related damages. Under 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages, costs, and reasonable attorney's fees (or their pro se equivalent). Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).

## COUNT V
### RICO CONSPIRACY
(18 U.S.C. § 1962(d))

Against All Defendants

**55.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**56.** Each Defendant agreed and conspired with one or more other Defendants to violate 18 U.S.C. § 1962(c). Each Defendant knew of the enterprise and agreed to the objective of the conspiracy: to extract money and property from a discharged debtor through the systematic prosecution of void foreclosures. This conspiracy is ongoing.

## COUNT VI
### QUIET TITLE AND RECOVERY OF PROPERTY

(Fla. Stat. § 65.061; 28 U.S.C. § 2201)

Against All Defendants

57. Plaintiff re-alleges and incorporates all preceding paragraphs.

58. Plaintiff holds legal and equitable title to each of the properties identified herein. The foreclosure judgments and sales through which Defendants claim interests are void ab initio and convey no rights. Plaintiff seeks an order quieting title to all properties in his name free and clear, cancelling all certificates of title derived from void sales, and ordering the return of all sale proceeds ($725,966.63) plus all rents collected by purchasers.

## COUNT VII
### CONVERSION AND CIVIL THEFT
(Fla. Stat. § 772.11)

Against Servicer Defendants, Law Firm Defendants, and Preservation Defendants

59. Plaintiff re-alleges and incorporates all preceding paragraphs.

60. Defendants wrongfully exercised dominion and control over Plaintiff's properties, sale proceeds, rental income, and personal property through void foreclosure actions, unauthorized property entries, and forced sales. Defendants extracted $725,966.63 in sale proceeds and destroyed Plaintiff's ability to collect rental income from 40+ properties. Under Florida Statutes § 772.11, Plaintiff is entitled to treble the amount of actual damages.

## COUNT VIII
### FAIR DEBT COLLECTION PRACTICES ACT
(15 U.S.C. § 1692 et seq.)

Against Law Firm Defendants

61. Plaintiff re-alleges and incorporates all preceding paragraphs.

62. Each Law Firm Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). Each Law Firm Defendant used false, deceptive, or misleading representations in connection with the collection of debts by filing verified foreclosure complaints that failed to disclose the discharge of the underlying debts. Each filing constitutes a separate violation of 15 U.S.C. §§ 1692e and 1692f.

## VII. DAMAGES

63. Plaintiff has suffered, and continues to suffer, damages exceeding $10,000,000 before trebling, including but not limited to:

(a) Loss of seven properties through void foreclosure sales: $725,966.63;

(b) Destruction of rental income from 40+ residential properties over 23+ years;

(c) Unauthorized property preservation fees, corporate advances, and force-placed insurance premiums charged to loan accounts;

(d) Property damage caused by forced entries, lock changes, and unauthorized "securing" of occupied properties;

(e) Tax delinquencies caused by diversion of rental income;

(f) Loss of business goodwill and tenant relationships;

(g) Emotional distress, anxiety, and loss of quality of life;

(h) Pro se litigation costs over eight years; and

(i) All other damages to be proven at trial.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jack Aberman respectfully requests that this Court enter judgment:

A. Declaring that the discharge injunctions entered on March 27, 2017 and March 27, 2023 permanently enjoin all Defendants from commencing or continuing foreclosure actions against Plaintiff;

B. Declaring all foreclosure complaints, judgments, orders, certificates of title, and sales identified herein VOID AB INITIO;

C. Ordering the cancellation of all certificates of title issued pursuant to void sales;

D. Quieting title to all properties in Plaintiff's name free and clear;

E. Holding all Defendants in civil contempt of the discharge injunctions;

F. Awarding compensatory damages in an amount to be proven at trial;

G. Awarding treble damages under 18 U.S.C. § 1964(c);

H. Awarding treble damages under Florida Statutes § 772.11;

I. Awarding statutory damages under 15 U.S.C. § 1692k;

J. Awarding punitive damages;

K. Awarding pre-judgment and post-judgment interest;

L. Ordering disgorgement of all fees, charges, and proceeds wrongfully collected by Defendants;

M. Enjoining all Defendants from further collection activity against Plaintiff;

N. Awarding costs of suit and reasonable litigation expenses; and

O. Granting such other and further relief as this Court deems just and equitable.

## IX. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable under 28 U.S.C. § 1411 and the Seventh Amendment.

## VERIFICATION

I, Jack Aberman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing factual allegations are true and correct to the best of my knowledge, information, and belief.

Dated: April 1, 2026

*Jack Aberman*

_____

/s/ Jack Aberman

Jack Aberman, Pro Se

428 N. Peninsula Drive

Daytona Beach, FL 32118

Phone: (407) 604-1457

Email: flrealestatemgt@gmail.com

## CERTIFICATE OF SERVICE

I certify that a copy of this Verified Adversary Complaint will be served on each Defendant by certified mail and/or first-class mail to the addresses listed in the B2500A Summons accompanying this filing, and by any other method authorized by Federal Rule of Bankruptcy Procedure 7004.

/s/ Jack Aberman