# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JACK ABERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 26-CV-00269-JLH |
| WILMINGTON TRUST, NATIONAL ASSOCIATION and | ) | |
| | ) | |
| | ) | |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF OF DEFENDANT THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION'S, SOLELY IN ITS CAPACITY AS TRUSTEE FOR FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2006-AA6 AND FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES <u>TRUST 2006-AA4 IN SUPPORT OF ITS MOTION TO DISMISS</u>**

**SAUL EWING LLP**

<u>*/s/ Jazmine B. King*</u>
Evan T. Miller (#5364)
Jazmine B. King (#7415)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
Evan.Miller@saul.com
Jazmine.King@saul.com

*Counsel for Defendant The Bank of New York Mellon Trust Company, National Association, solely in its capacity as Trustee of the First Horizon Alternative Mortgage Securities Trust 2006-AA6 and First Horizon Alternative Mortgage Securities Trust 2006-AA4*

Dated:  May 19, 2026

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS ........................... 1

SUMMARY OF ARGUMENT .................................................................................. 3

STATEMENT OF FACTS ....................................................................................... 4

    1.    The 2013 Bankruptcy Cases and Discharge Orders. .......................................... 4

    2.    The 2018 Bankruptcy Case and 2020 Plan ....................................................... 5

    3.    Plaintiff's Failed Attempts to Reopen the Bankruptcy Cases ............................. 6

ARGUMENT ......................................................................................................... 9

    I.    THIS COURT LACKS SUBJECT MATTER TO HEAR PLAINTIFF'S CLAIMS ..... 9

    II.    PLAINTIFF FAILS TO ESTABLISH VENUE IS PROPER IN DELAWARE FOR
        THIS ACTION ................................................................................... 12

    III.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE
        GRANTED. ....................................................................................... 14

        A.    Plaintiff is not entitled to a Declaratory Judgment. ..................................... 14

        B.    Plaintiff is not entitled to injunctive relief. ................................................ 15

        C.  The doctrines of res judicata and collateral estoppel bar the relitigation of Plaintiff's
        claims. ........................................................................................ 16

            1. Res Judicata ........................................................................... 16

            2. Collateral Estoppel ................................................................... 18

        D.    In rem Foreclosure Does Not Violate Discharge Injunctions. ........................ 19

    IV.    THE ANTI-INJUNCTION ACT BARS THE COMPLAINT'S RELIEF. ............... 20

CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

CASES

*Aberman v. Seventh Jud. Cir. Ct., Volusia Cnty.*,
No. SC2025-1981, 2026 WL 36558 (Fla. Jan. 30, 2026) ...........................................7

*Aberman v. Seventh Jud. Cir. Ct., Volusia Cnty.*,
No. SC2025-1981 (Fla. Dec. 11, 2025) ......................................................................6

*Aberman v. Seventh Judicial Circuit of Florida*,
No. 5D2026-0033 (Fla. 5th DCA Feb. 16, 2026) ..................................................7, 8

*Aberman v. Volusia Cnty., Fla.*,
No. 6:25-CV-1416-WWB-DCI, 2025 WL 2955717 (M.D. Fla. Sept. 8, 2025) ......18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................14

*Ayres-Fountain v. E. Sav. Bank*,
153 F. App'x 91 (3d Cir. 2005) .................................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................14

*Biogen Int'l GmbH v. Amneal Pharms. LLC*,
487 F. Supp. 3d 254 (D. Del. 2020) ..........................................................................18

*Cannon v. Delaware*,
2012 WL 1657127 (D. Del. May 9, 2012) .................................................................14

*Colahar v. Wells Fargo Bank N.A.*,
56 F. Supp. 3d 608 (D. Del. 2014) ............................................................................11

*Coppedge v. Conway*,
2015 WL 168839 (D. Del. Jan. 12, 2015) ..................................................................20

*Delta Air Lines, Inc. v. Chimet, S.p.A.*,
619 F.3d 288 (3d Cir. 2010) ......................................................................................13

*Denston v. Chapman*,
2006 WL 2868249 (3d Cir. Oct. 10, 2006) ...............................................................12

*Educational Impact, Inc. v. Danielson*,
2015 WL 381332 (D.N.J. 2015) ................................................................................15

*Elkadrawy v. Vanguard Grp., Inc.*,
  584 F.3d 169 (3d Cir. 2009) ................................................................................16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) .............................................................................................11

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ................................................................................14

*Great Western Mining and Mineral Co. v. Fox Rothschild LLP*,
  615 F.3d 159 (3d Cir. 2010) ................................................................................11

*Hussain v. PNC Fin. Servs. Grp.*,
  692 F. Supp. 2d 440 (D. Del. 2010) .....................................................................4

*In re Arctic Glacier Int'l, Inc.*,
  255 F. Supp. 3d 534 (D. Del. 2017) ....................................................................17

*In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*,
  82 F. Supp. 3d 608 (D.N.J. 2015) .......................................................................15

*In re Bowen*,
  174 B.R. 840 (Bankr. S.D. Ga. 1994) ................................................................17

*In re Congoleum Corp.*,
  149 F.4th 318 (3d Cir. 2025) ................................................................................9

*In re Docteroff*,
  133 F.3d 210 (3d Cir. 1997) ................................................................................19

*In re Essar Steel Minn., LLC*,
  47 F.4th 193 (3d Cir. 2022) ..................................................................................9

*In re Golden*,
  568 B.R. 838 (Bankr. M.D. Ala. 2017) ..............................................................19

*In re LandSource Communities Dev., LLC*,
  612 B.R. 484 (D. Del. 2020) ...............................................................................10

*In re Lazy Days' RV Ctr. Inc.*,
  724 F.3d 418 (3d Cir. 2013) ................................................................................10

*In re New Century TRS Holdings, Inc.*,
  423 B.R. 467 (Bankr. D. Del. 2010) ...................................................................11

*In re Northfield Lab'ys Inc.*,
  467 B.R. 582 (Bankr. D. Del. 2010) ...................................................................17

iii

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW)*
    *v. Visteon Corp.*,2013 WL 12441092 (E.D. Mich. Oct. 22, 2013)................................10

*Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*,
    458 F.3d 244 (3d Cir. 2006)................................................................................18, 19

*Legacy Venture West Development, LLC v. Summer's End Group, LLC*,
    2020 WL 3474169 (V.I. Super. June 24, 2020)...............................................................15

*Leveto v. Lapina*,
    258 F.3d 156 (3d Cir. 2001)................................................................................14

*Mader v. Union Township*,
    2021 WL 3852072 (W.D. Pa. 2021)........................................................................16

*Mazzoccoli v. Merit Mountainside LLC*,
    C.A. No. 12–2168, 2012 WL 6697439 (D.N.J. Dec. 20, 2012) ................................15

*NutraSweet Co. v. Vit-Mar Enters., Inc.*,
    176 F.3d 151 (3d Cir. 1999)................................................................................15

*Shawe v. Pincus*,
    265 F. Supp. 3d 480 (D. Del. 2017)......................................................................11

*Taliaferro v. Darby Twp. Zoning Bd.*,
    458 F.3d 181 (3d Cir. 2006)................................................................................12

*Tradimpex Egypt Co. v. Biomune Co.*,
    777 F. Supp. 2d 802 (D. Del. 2011)......................................................................13

*Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*,
    292 F.3d 384 (3d Cir. 2002)................................................................................16

*Wells v. City of Wilmington, Delaware*,
    257 F. Supp. 3d 628 (D. Del. 2017)......................................................................11

*Yates v. Yates*,
    2018 WL 1444576 (D. Del. Mar. 23, 2018) ......................................................16, 17

*Zweigenhaft v. PharMerica Corp.*,
    2021 WL 6424061 (D. Del. Dec. 10, 2021)...............................................................16

**STATUTES**

11 U.S.C. § 105(a) ........................................................................................................15

Chapter 11 of the bankruptcy code ....................................................................... passim

Declaratory Judgment Act ...........................................................................................15

**INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff's Complaint should be dismissed in its entirety because he admittedly initiates this action as a result of every other state and federal court to consider his claims having already rejected them. *See* Complaint (D.I. 3) (cited herein as "**Compl.**"). Against a backdrop of bald accusations against virtually every overseeing court and official to date, Plaintiff now seeks "an independent federal forum" in Delaware to enforce Florida bankruptcy court orders dating back to 2020. Indeed, *the very day* the U.S. Court of Appeals for the Eleventh Circuit denied one of his latest attempts at this relief, Plaintiff filed the Complaint in this Court, a venue with no relation or interest in anything occurring in Florida; two weeks later, he filed more Florida-based suits in the United States Bankruptcy *and* District Courts for the Eastern District of Pennsylvania. Without regard to the substance of the Complaint, then, Plaintiff's admitted forum shopping should not be countenanced by this Court.

Even looking to the substance, the Complaint's goal is to invalidate binding judgments rendered by Florida state and federal courts in connection with foreclosure proceedings initiated against properties (the "**Properties**") purportedly owned by Plaintiff or his rental property business, GEA Seaside Investments, Inc. ("**GEA Seaside**"). The Properties are located in Florida and were subject to mortgages in favor of, *inter alia*, Defendant The Bank of New York Mellon Trust Company, National Association ("**BNY**") solely in its capacity as trustee for First Horizon Alternative Mortgage Securities Trust 2006-AA6 and First Horizon Alternative Mortgage Securities Trust 2006-AA4.[1] By quitclaim deed, Plaintiff allegedly conveyed certain Properties to GEA Seaside but remained listed as the individual obligor on every mortgage.

---

[1] The Complaint improperly sues BNY generally in the caption as opposed to its individual role as Trustee for the applicable trusts and thus provides a separate grounds for dismissal. To be sure, Defendant intends to file an Amended Notice of Appearance with the Court reflecting its limited capacity.

Between 2013 and 2018, Plaintiff, individually, and GEA Seaside, filed four bankruptcy cases (the "**Bankruptcy Cases**") in the U.S. Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**").  Plaintiff alleges that the Bankruptcy Court confirmed Chapter 11 plans and entered discharge injunctions in three of the bankruptcy cases, thus allegedly enjoining creditors from collecting or recovering any discharged debt as personal liability against Plaintiff. Plaintiff purportedly raised these arguments in the Seventh Judicial Circuit Court (Volusia County) of Florida ("**Florida State Court**") seeking to stop foreclosures against the Properties, but was rejected (including as recently as April 10, 2026, when the Florida State Court denied a motion to, *inter alia*, void foreclosure)[2], thereby allowing BNY (and others) to continue forward.  To prevent the foreclosure sales, Plaintiff concurrently sought largely overlapping relief in the Florida Supreme Court, the Bankruptcy Court, and the U.S. Court of Appeals for the Eleventh Circuit.

In particular, Plaintiff sought to reopen the Bankruptcy Cases on February 17, 2026, by filing a motion in the Bankruptcy Court so as to "enforce" the discharge orders allegedly entitling him to relief.  Nine days later, the Bankruptcy Court denied the motion, which ruling was never appealed and has now gone final.  Parallel proceedings in the Eleventh Circuit—through which Plaintiff asked via mandamus that the court:  (i) *compel* the Bankruptcy Court to reopen the Bankruptcy Cases, (ii) transfer same to a different division, (iii) order recusal of any presiding judges, (iii) to stay state court foreclosure proceedings, and (iv) punish parties who participated in said proceedings—were likewise rejected initially on March 12, 2026, and again on May 7, 2026, by denying Plaintiff's petition for rehearing.  As the Eleventh Circuit held, Plaintiff's remedy was to seek to reopen the Bankruptcy Cases which, as noted, was unsuccessful.

---

[2] *See, e.g.,* Florida State Court Case No. 2024-12045 (Docket No. 119) (regarding Property at 101 Carolyn Terrace, Daytona Beach, FL 32127), attached as **Exhibit A**; *see also* Compl. at ¶ 23.

Now, Plaintiff appears in this Court seeking the same substantive relief already decided by the Florida state and federal courts. Leaving aside the fatal forum shopping issues already discussed, the Complaint pleads nothing to demonstrate that this Court has jurisdiction or venue to hear these Florida bankruptcy claims, thus separately warranting dismissal of this action. BNY respectfully requests that the Court dismiss the Complaint.

## SUMMARY OF ARGUMENT

1. To the extent Plaintiff sought relief at the federal level, the Eleventh Circuit already directed Plaintiff that his remedy was to reopen the Bankruptcy Cases, which he failed to successfully do. He compounded this failure by not appealing the ruling, thereby causing the Bankruptcy Court's ruling to become final. Any attempt to circumvent that reality is nothing more than a collateral attack on the Bankruptcy Court's orders and sole jurisdiction over same.

2. Plaintiff's action is further barred under the Rooker-Feldman doctrine because the Florida State Court already rejected his attempt to stop the foreclosures he complains of. He now asks this Court to effectively displace or appeal those state rulings. The Rooker-Feldman doctrine allows no such thing, and thus this Court lacks subject-matter jurisdiction.

3. Furthermore, Plaintiff's claims must be dismissed under the doctrine of *forum non conveniens*. As already directed by the Eleventh Circuit, the Bankruptcy Court—the very court that **issued** the discharge injunction he seeks to enforce—is the appropriate and sole venue to consider Plaintiff's claims. At all times, Plaintiff's claims stem from the Bankruptcy Court, where his claims were originally filed and heard. This Court has no ties to the Bankruptcy Cases.

4. Plaintiff has failed to state a claim upon which relief can be granted. As indicated in the Complaint, Plaintiff seeks declaratory judgment and injunctive relief, which alone are legal remedies and are not independent causes of action. Additionally, since other state and federal

courts have heard and rendered decisions on issues similar to Plaintiff's concerns in the present

action, Plaintiff's Complaint is barred under the doctrine of *res judiciata* and collateral estoppel.

### **STATEMENT OF FACTS**[3]

For twenty-two years, Plaintiff has purportedly been the sole owner and only member of

GEA Seaside, a rental property business located in Volusia County, Florida. *See Compl.* at ¶¶ 1,

6. As the operator of the business, Plaintiff has purportedly owned numerous residential properties

located in Florida and leased the properties to tenants as a source of income. *See id.* Several of

the properties were subject to a mortgage wherein Plaintiff is named as the individual obligor on

each mortgage, deed, and title. *See id.* at ¶ 1. Plaintiff also conveyed certain properties to GEA

Seaside by quitclaim deed but remained the individual obligor on every mortgage. *See id.*

### 1.    *The 2013 Bankruptcy Cases and Discharge Orders.*

On January 10, 2013, Plaintiff, individually, filed a petition for Chapter 11 bankruptcy in

the U.S. Bankruptcy Court for the Middle District of Florida (the "**Individual Action**"). *See id.*

at ¶ 15 (disclosing the original bankruptcy filing is captioned Case No. 3:13-bk-00167-JAF). That

same day, GEA Seaside also filed a petition under Chapter 11 of the bankruptcy code in the same

court (the "**First GEA Seaside Action**"). *See id.* at ¶ 14 (captioned Case No. 3:13-bk-00165-

JAF).

On January 5, 2016, the Bankruptcy Court confirmed the Chapter 11 plans in both

bankruptcy cases. *See id.* at ¶ 16. On March 27, 2017, Plaintiff alleges the court entered a

---

[3] BNY disputes many of the facts alleged in Plaintiff's Complaint. However, for the purposes of
this Motion, the facts alleged by Plaintiff are taken as true. Additionally, this Motion references
the documents specifically referenced in the Complaint and matters of public record. *See Hussain
v. PNC Fin. Servs. Grp.*, 692 F. Supp. 2d 440, 442-43 (D. Del. 2010) ("In evaluating a Rule
12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of
the complaint, documents attached or specifically referenced in the complaint if the claims are
based upon those documents, and matters of public record.").

discharge injunction for Plaintiff in both bankruptcy cases. *See id.* at ¶ 17. Subsequently, thereafter, both actions were closed in March 2017. *See id.*

### 2. *The 2018 Bankruptcy Case and 2020 Plan*

On March 12, 2018, GEA Seaside filed a second Chapter 11 petition in the U.S. Bankruptcy Court for the Middle District of Florida (the "**Second GEA Seaside Action**"). *See id.* at ¶ 18 (the Second GEA Seaside Action is captioned Case No. 3:18-bk-00800-JAF). This bankruptcy action involved the property mortgages that Plaintiff conveyed to GEA Seaside. *See generally* Compl. For purposes of this response, BNY acted on behalf of two investors – First Horizon Alternative Mortgage Securities Trust 2006-AA6 and First Horizon Alternative Mortgage Securities Trust 2006-AA4 – and managed mortgages held in a trust concerning two of the five properties identified in the Complaint:  101 Carolyn Terrace and 509 Harvey Avenue, both in Daytona Beach, FL (collectively, the "**FHAM Properties**"). *See id.* at ¶¶ 22-26.

Public record shows that between April and June of 2020, BNY, as the secured creditor, and GEA Seaside, as the debtor, executed and filed joint stipulations, setting forth GEA Seaside's Chapter 11 plan (the "**Chapter 11 Plan**" or "**Plan**") for the FHAM Properties. *See generally* Stipulations, D.I. 1098 and 1237,  attached hereto as **Exhibit B**. Indicated in each bankruptcy stipulation, the parties agreed that upon completion of a set number of mortgage payments "(whether over the full Plan term or completed via pre-payment), the lien of [BNY]… shall be null and void and no longer of any further force or effect. The court reserves jurisdiction to enter further orders as may be necessary to establish clear title for Debtor." *See id.* at p. 1. Additionally, the parties agreed that in the event that GEA Seaside was in default of a mortgage payment, it would "cure the default within ten (10) business days from receipt of the written notice provided" by BNY "or respond in writing detailing grounds that no default exists." *See generally id.* On the other hand, if GEA Seaside failed "to respond in writing or fail to cure the default timely, [BNY]

5

may proceed with its rights and default remedies under state law and is granted prospective relief from stay in the event of a future bankruptcy filing by Debtor or an affiliate transferee." *See generally id.*

On or about July 20, 2020, the Bankruptcy Court entered an order confirming GEA Seaside's plan of reorganization (the "**Confirmation Order**"). *See* Confirmation Order (D.I. 1282) at pp. 3, 20, attached hereto as **Exhibit C**. The terms of the parties' stipulations concerning each Property were incorporated by reference in the bankruptcy court's order. *See generally id.*

On March 27, 2023, the Bankruptcy Court entered a final decree and discharge injunction against the Properties, including the FHAM Properties. *See* Final Decree (D.I. 1158), attached hereto as attached hereto as **Exhibit D**. The Final Decree provides that the "automatic stay provisions shall be lifted as to all creditors to allow any State Court action regarding an alleged default of the terms of the confirmed plan" and following "entry of this Order, the default provision in the loan documents shall control any default under the confirmed plan. Any requirement to send a separate default notice in the Bankruptcy Case shall have no further force or effect." *Id.* at ¶ 3. Failure to pay on the Properties' mortgages, of course, would constitute a default under the terms of the confirmed Plan. *See generally id.* Thereafter, the Second GEA Seaside Action was closed. *See id.* at ¶ 4.

### 3.    *Plaintiff's Failed Attempts to Reopen the Bankruptcy Cases*

On December 11, 2025, Plaintiff petitioned the Florida Supreme Court ("**FSC**") for writs of mandamus and prohibition, seeking to: (i) prohibit the Florida State Court from proceeding with foreclosure proceedings; (ii) compelling the Florida State Court to recognize the purported discharge orders from 2013; (iii) stay all pending foreclosures and void all judgments to date. *See* Pltf's Petition for Writ of Prohibition and Mandamus, attached hereto as **Exhibit E**, *Aberman v. Seventh Jud. Cir. Ct., Volusia Cnty.*, No. SC2025-1981 (Fla. Dec. 11, 2025) (D.I. 1). He separately

filed an *Emergency Motion for Stay of All Foreclosure Proceedings and Sales Pending Disposition of Petition for Writ of Prohibition*. *See* **Exhibit F**. On January 6, 2026, the FSC transferred the matter to Florida's Fifth District Court of Appeal. *See Aberman v. Seventh Jud. Cir. Ct., Volusia Cnty.*, No. SC2025-1981, 2026 WL 36558 (Fla. Jan. 6, 2026), *reconsideration denied*, No. SC2025-1981, 2026 WL 253222 (Fla. Jan. 30, 2026). On February 16, 2026, the Fifth District Court of Appeal (together with the FSC and Florida State Court, the "**Florida Courts**") denied the petition. *See* Feb. 16, 2026 Fla. Ct. Order, attached hereto as **Exhibit G**, *Aberman v. Seventh Judicial Circuit of Florida*, No. 5D2026-0033 (Fla. 5th DCA Feb. 16, 2026). Notwithstanding, Plaintiff continued filing submissions in the FSC docket as late as April 9, 2026.

On December 18, 2025, Plaintiff petitioned the Eleventh Circuit for a writ of mandamus and prohibition arising out of proceedings in the Bankruptcy Court. *See* Pltf's Petition for Writ of Mandamus, attached hereto as **Exhibit H**. In his mandamus petition, Plaintiff argued that the Florida state courts ignored the discharge injunctions entered by the Bankruptcy Court and improperly allowed his Properties to be foreclosed. *See generally id.* As relief, Plaintiff requested that the Eleventh Circuit: (i) compel the bankruptcy court to reopen his Bankruptcy Cases and enforce the discharge injunctions; (ii) order the transfer of his Bankruptcy Cases to the Orlando Division of the U.S. Bankruptcy Court for the Middle District of Florida; (iii) order the recusal of judges presiding over his cases; and (iv) stay state-court foreclosure proceedings against Plaintiff, void foreclosures of his Properties, award him damages, and take action to punish the parties who have participated in the foreclosure proceedings. *See generally id.*; *see also* Pltf's Dec. 18, 2025 Emergency Motion to Stay State Court Foreclosure Proceedings, attached hereto as **Exhibit I**. While waiting for the Eleventh Circuit to render a decision on the mandamus petition, Plaintiff also filed an "emergency motion" in the Bankruptcy Court, in which he reiterated his arguments

7

that the foreclosure of his Properties violated the Bankruptcy Court's discharge injunctions. *See generally* Pltf's Feb. 17, 2026 Motion (D.I. 1604), attached hereto as **Exhibit J**. As for relief, Plaintiff reasserted the same requests included in his mandamus petition and requested that the court enter a temporary restraining order enjoining all action taken with regards to the foreclosures on the Properties and to stay all state court proceedings concerning the Properties. *See id.* at pp. 9-10. The Bankruptcy Court denied Plaintiff's motion on February 26, 2026. *See* Feb. 26, 2026 Order (D.I. 1605), attached hereto as **Exhibit K**. Plaintiff never appealed or took other action to reopen the Bankruptcy Case.

On March 12, 2026, the Eleventh Circuit denied Plaintiff's writ for mandamus. *See* Mar. 12, 2026 Eleventh Circ. Ct. Order, attached hereto as **Exhibit L**. As to Plaintiff's request that the Eleventh Circuit compel the Bankruptcy Court to reopen his cases and enforce discharge injunctions, the court held that Plaintiff had and exercised the adequate alternative remedy of moving the bankruptcy court to reopen his cases. *See id.* at p. 5. Similarly, the Eleventh Circuit explained that Plaintiff had the adequate alternative remedy of appealing the bankruptcy court's denials of his motions to reopen. *See id.* The Court also came to the same conclusion regarding Plaintiff's request to transfer his bankruptcy cases to the Orlando Division of the Bankruptcy Court. *See id.* Further, the same day that the Eleventh Circuit entered its March 12, 2026 Order, Plaintiff initiated the instant action in this Court and shortly thereafter filed a related action in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania. *See generally* Compl.; *see also Aberman v. Newrez LLC d/b/a/ Shellpoint Mortgage Servicing*, C.A. No. 2:26-cv-00918-JDW (E.D. Pa. Feb. 17, 2026).

On May 7, 2026, the Eleventh Circuit revisited its March 12, 2026 Order after Plaintiff filed a motion for panel rehearing/reconsideration and rehearing en banc of the Court's denial of

his mandamus petition. *See generally* May 7, 2026 Eleventh Cir. Ct. Order, attached hereto as

**Exhibit M.**  Here, the Eleventh Circuit determined that Plaintiff's petition for a panel rehearing

did not raise any points of law or fact that the Court misapprehended or overlooked in denying his

mandamus and prohibition petition.  *See id.* at p. 9.  Instead, the Court reiterated that even if

Plaintiff's "prior motions were all denied and the alternatives would likely not provide him with

his requested relief, this Court correctly held that moving the bankruptcy court to reopen his cases,

appealing the bankruptcy court's denial of his motion to reopen, and moving the bankruptcy court

for a transfer of his cases were adequate alternative remedies, as each alternative could have

provided Aberman with the relief he requested in his" mandamus petition.  *See id.* at p. 10.

To date, Plaintiff alleges he has been involved in 148 foreclosure actions concerning his

Properties, spanning a total of 18 years.  *See* Compl. at ¶ 19.  During this period, Plaintiff alleges

he has sought relief from "[e]very available form" and in turn, has been denied the relief he seeks.

*See id.* at ¶ 5.  Indeed, Plaintiff claims that the "Florida state courts have denied" all of Plaintiff's

motions to vacate void the foreclosure proceedings and sales of the Properties.  *See id.*  at ¶¶ 5, 27-

31.  Likewise, Plaintiff claims the FSC has also refused to provide Plaintiff with his requested

relief.  *See id.* at ¶¶ 5, 31.

**ARGUMENT**

**I.    THIS COURT LACKS SUBJECT MATTER TO HEAR PLAINTIFF'S CLAIMS.**

The Florida Bankruptcy Court issued the Confirmation Order and the injunction Plaintiff

seeks to enforce, so the Bankruptcy Court has the jurisdiction to enforce same. *See In re*

*Congoleum Corp.*, 149 F.4th 318, 327 (3d Cir. 2025) (concluding the bankruptcy court "had

jurisdiction over the motion to reopen under 28 U.S.C. § 157(b) because the motion for an order

interpreting and enforcing the Confirmation Order was a core bankruptcy proceeding."); *In re*

*Essar Steel Minn., LLC*, 47 F.4th 193, 199 (3d Cir. 2022) (holding that a post-confirmation request

9

from a third party to interpret and enforce confirmation order was a core proceeding).  The Third Circuit has been consistent on the point that a bankruptcy court is "well suited to provide the best interpretation of its own order." *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 423 (3d Cir. 2013); *see also In re LandSource Communities Dev., LLC*, 612 B.R. 484, 494 (D. Del. 2020) (same) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. at 151, 129 (2009) (explaining that bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce [their] own prior orders" and affirming bankruptcy court order enjoining multiple state law actions initiated in violation of third-party release and injunction in Chapter 11 plan and confirmation order); *In re Malmgren*, 277 B.R. 755, 759 (Bankr. E.D. Wis. 2002) ("If an order is to have any true meaning, if a party is to be able to place any justifiable reliance on an order, if a court is to have any credibility and command any respect, then it must enforce its own orders.")).

Therefore, as the Eleventh Circuit already explained, the proper forum for this dispute is, has been, and always was the Bankruptcy Court.  Both the Plan and Confirmation Order expressly reserve jurisdiction "to enter further orders as may be necessary to establish clear title for Debtor" (*see generally* Ex. B) or to "enforce the provisions of this confirmation order or to enforce the provisions of previous court orders." Ex. C at ¶ 26.  Indeed, under analogous circumstances, courts have relied on this retention of jurisdiction language to transfer matters to their original bankruptcy location. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW) v. Visteon Corp.*, 2013 WL 12441092, at *3 (E.D. Mich. Oct. 22, 2013) (granting Delaware debtor's request to transfer post-confirmation litigation from Michigan federal court to Delaware federal court, agreeing with defendant that the Delaware bankruptcy court had exclusive jurisdiction over dispute "[b]ased on the express [reservation of jurisdiction] language of the Confirmed Plan.").  Such is the case here.

Furthermore, Plaintiff's Complaint should be dismissed because the pleading is nothing more than an impermissible collateral attack on federal and state courts in Florida. Under the Rooker–Feldman doctrine, it is well established that a federal district court lacks subject-matter jurisdiction to review final state court judgments. *See Wells v. City of Wilmington, Delaware*, 257 F. Supp. 3d 628, 633 (D. Del. 2017); *Colahar v. Wells Fargo Bank N.A.*, 56 F. Supp. 3d 608, 612 (D. Del. 2014). The Supreme Court directs that Rooker-Feldman arises in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Third Circuit distills the doctrine as follows: (1) the federal plaintiff lost in state court; (2) the plaintiff presently complains of injuries caused by the state court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *See Great Western Mining and Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). If all four requirements are met, the doctrine acts by precluding "federal district courts from hearing cases 'that are essentially appeals from state-court judgments.'" *Shawe v. Pincus*, 265 F. Supp. 3d 480, 485 (D. Del. 2017) (quoting *Great W. Mining*, 615 F.3d at 165). Likewise, the Third Circuit has recognized that the Rooker-Feldman doctrine equally applies to the federal bankruptcy courts. *See In re New Century TRS Holdings, Inc.*, 423 B.R. 467, 472 (Bankr. D. Del. 2010) (granting motion to dismiss under 12(b)(1) and 12(b)(6) based on state court rulings as to mortgage foreclosure).

To be clear, application of this doctrine does not require verbatim circumstances as between the federal and state court proceedings at issue. Rooker-Feldman precludes a district court from "entertaining an action . . . if the relief requested effectively would reverse a state court

11

decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006); *see Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 92-93 (3d Cir. 2005) (ruling that plaintiff's federal court action seeking rescission of a mortgage note and award of damages based on fraud was barred by the Rooker–Feldman doctrine because relief in plaintiff's favor would "invalidate" the judgment entered against her in a state foreclosure action based on her default of the note and mortgage); *Denston v. Chapman*, 2006 WL 2868249, at *1 n.1 (3d Cir. Oct. 10, 2006) (observing that, to the extent that the relief which the plaintiff requested would require rejection of the state courts' judgments, the federal court lacked jurisdiction over those claims).

Here, the Rooker-Feldman doctrine applies. As indicated in the Complaint, Plaintiff admits he has filed serial, repetitive pleadings in various courts across the country wherein he alleges that the Florida state courts violated the Bankruptcy Court's discharge injunctions by allowing foreclosure proceedings and sales of the Properties. *See generally* Compl. By his own admission, Plaintiff admits that the Florida Courts have denied all his requests for relief (as have the Florida federal courts, for that matter). *See id.* Plaintiff now files the present action, requesting that this Court take action that the Rooker-Feldman doctrine directly prohibits federal courts to do—reverse the Florida state court foreclosure proceedings and/or render them unenforceable against the Properties. *See id.* Because Plaintiff seeks to invalidate judgments entered by the Florida Courts (even if disguised as a federal enforcement request), this Court cannot maintain subject matter jurisdiction over the present action. For this additional reason, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

## II. PLAINTIFF FAILS TO ESTABLISH VENUE IS PROPER IN DELAWARE FOR THIS ACTION.

Delaware is not the proper jurisdiction to hear Plaintiff's claims. The Third Circuit has recognized that a district court may grant a motion to dismiss based on *forum non conveniens* if

"an alternative forum has jurisdiction to hear the case and trial in the plaintiff's chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Delta Air Lines, Inc. v. Chimet, S.p.A.,* 619 F.3d 288, 294-95 (3d Cir. 2010) (citations omitted) (alterations to original).  In applying the doctrine of *forum non conveniens,* the courts examine four factors:  "(1) the existence and adequacy of an alternative forum for the litigation; (2) the amount of deference that should be accorded to the plaintiff's choice of forum; (3) the convenience of the parties, also known as private interest factors; and (4) the interests of the forum, also known as "public interest factors." *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 806–07 (D. Del. 2011).  Additionally for the last element under the doctrine, "[a] defendant seeking dismissal on *forum non conveniens* ground must show that the balance of the public and private factors 'tips decidedly in favor of trial in the foreign forum.'" *Id.* (quoting *Windt v. Qwest Communications Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008)).  The record demonstrates that all elements are satisfied here.

The Bankruptcy Cases were filed and administered in the U.S. Bankruptcy Court for the Middle District of Florida.  *See generally* Compl.  The Properties at issue are located in Florida. *See id.*  The foreclosure proceedings are in Florida state courts.  *See id.*  The Plan and Confirmation Order were approved by the Bankruptcy Court, which as already noted,  retains exclusive jurisdiction to enforce both (*see* Exs. B, C) and Plaintiff has even been directed by a federal circuit court that his best remedy is in Bankruptcy Court.  *See* Exs. L, M.  Plaintiff has no discernible connection to Delaware other than an admitted interest in forum-shopping.  The Court should not endorse this strategy.  As a result, the Complaint should be dismissed.

### III. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's well-pleaded facts as true, but disregard any legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court's ultimate determination is whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211. "[T]he complaint must do more than allege [a plaintiff's] entitlement to relief; rather it must 'show' such an entitlement with its facts." *Cannon v. Delaware*, 2012 WL 1657127, at *5 (D. Del. May 9, 2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully"). "When the allegations in the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Additionally, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense…appears on its face." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). The Complaint here is based on conclusory and baseless shotgun allegations in plain violation of Fed. R. Civ. Pro. 8, does not raise a plausible claim for relief, and likewise names BNY only generally and not in its capacity as trustee for the securitized trusts. For these reasons and those that follow, the Complaint should be dismissed in its entirety.

#### A. Plaintiff is not entitled to a Declaratory Judgment.

Stated as Count I, Plaintiff seeks a declaration that: "(i) the three…Chapter 11 discharge orders permanently prohibit Defendants from pursuing any foreclosure action against Plaintiff's [P]roperties; (ii) all foreclosure actions filed by or on behalf of Defendants are *void ab initio*; (iii) all completed foreclosure sales of properties held in trust by Defendants are *void ab initio* and of

14

no legal effect; and (iv) Defendants are liable for civil contempt under 11 U.S.C. § 105(a) for

pursuing foreclosures in…violation of the discharge injunctions." *See* Compl. ¶ 37.  While BNY

maintains that this Court lacks jurisdiction to decide Plaintiff's claims and that the affirmative

defenses of *res judicata* and collateral estoppel warrant dismissal of Plaintiff's Complaint (as

discussed below), BNY notes that the Declaratory Judgment Act is procedural only and does not

create an independent cause of action.  *See In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices

Litig.*, 82 F. Supp. 3d 608, 624-25 (D.N.J. 2015) ("The Declaratory Judgment Act is a procedural

vehicle that creates a form of relief; it does not create a cause of action courts may be compelled

to enforce").  Because Plaintiff's allegations are subject to dismissal for the reasons discussed

herein, there is no legal ground for any declaratory judgment.  *See, e.g., Mazzoccoli v. Merit

Mountainside LLC*, C.A. No. 12–2168, 2012 WL 6697439, at *9 (D.N.J. Dec. 20, 2012)

(dismissing case where the only remaining cause of action was under the Declaratory Judgment

Act).  Accordingly, Plaintiff's declaratory judgment claim (Count I) must be dismissed.

**B.      Plaintiff is not entitled to injunctive relief.**

As explained in BNY's Opposition to Plaintiff's Motion for Temporary Restraining Order

and a Preliminary Injunction (D.I. 16), Plaintiff is not entitled to injunctive relief because he fails

to meet the four-factor standard necessary for the Court to issue a preliminary injunction.  *See

NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (listing the four-factor

test for issuance of a restraining order and preliminary injunction).  Even more clear, at the motion

to dismiss stage, Third Circuit courts have routinely held that "injunctive relief is a form of relief,

not a cause of action." *Legacy Venture West Development, LLC v. Summer's End Group, LLC*,

2020 WL 3474169, at *4 (V.I. Super. June 24, 2020); *see, e.g., Educational Impact, Inc. v.

Danielson*, 2015 WL 381332, at *21 (D.N.J. 2015) (concluding that "injunctive relief is not a cause

of action but only a remedy" and dismissing plaintiff's injunctive relief claim as a separate count);

15

*Mader v. Union Township*, 2021 WL 3852072, at *8 (W.D. Pa. 2021) ("Where a plaintiff includes a request for relief as a separate cause of action, the court may dismiss the count as redundant and not in conformity with Federal Rule of Civil Procedure 8."). Accordingly, because Plaintiff devotes a separate count of his Complaint to injunctive relief, Plaintiff's Count II should be dismissed.

**C.    The doctrines of res judicata and collateral estoppel bar the relitigation of Plaintiff's claims.**

This Court should find that this lawsuit is part of a "series of connected transactions" and thus satisfies the requirements for a finding that *res judicata* applies. *See Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009). To the extent this action is not barred under *res judicata*, the Court should find collateral estoppel bars the Complaint.

**1.    *Res Judicata***

The doctrine of *res judicata*, or claim preclusion, "acts as a bar to relitigation of an adjudicated claim between parties and those in privity with them." *Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384 (3d Cir. 2002) (citation omitted). This Court has recognized that the doctrine bars not only claims that were brought in the previous action, but also claims that could have been brought. *See Yates v. Yates*, 2018 WL 1444576, at *3 (D. Del. Mar. 23, 2018) ("[R]es judicata will not be defeated by minor differences of form, parties or allegations' where the 'controlling issues have been resolved in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.'") (internal citation omitted). For this reason, res *judicata* "'exists to provide a definite end to litigation, prevent vexatious litigation, and promote judicial economy.'" *Zweigenhaft v. PharMerica Corp.*, 2021 WL 6424061 (D. Del. Dec. 10, 2021) (quoting *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del. 2009)).

16

For *res judicata* to apply, the party invoking it must establish: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action. *See Yates*, 2018 WL 1444576, at *3. All elements are satisfied here. First, for purposes of bankruptcy proceedings, it is well settled that "[a]n order confirming a plan of reorganization possesses all the requisite elements of common law res judicata." *In re Bowen*, 174 B.R. 840, 847 (Bankr. S.D. Ga. 1994); *see also In re Arctic Glacier Int'l, Inc.*, 255 F. Supp. 3d 534, 546 (D. Del. 2017) ("For claim preclusion purposes, a plan confirmation order is a final order on the merits"). For the first element, there can be no dispute that there was a final judgment on the merits entered in the Second GEA Seaside Action. As alleged in the Complaint, on July 20, 2020, the Bankruptcy Court entered an order confirming GEA Seaside's plan of reorganization. *See* Compl. ¶ 18; *see also* at Ex. C. The Confirmation Order served as a final, binding adjudication on the merits concerning Plaintiff's obligations under the mortgages. *See In re Northfield Lab'ys Inc.*, 467 B.R. 582 (Bankr. D. Del. 2010) ("Claim preclusion applies to confirmed plans of reorganization, just as it does to any final judgment on the merits.") (citation omitted). In addition, the Bankruptcy Court denied the motion to reopen, the Florida Courts rejected Plaintiff's arguments, and the Eleventh Circuit denied mandamus. *See supra* pp. 6-9. Next, the "same parties" requirement is satisfied as the parties in this action are either the same parties, or in privity with the parties from the Second GEA Seaside Action or the subsequent Florida state and federal actions. Lastly, the instant cause of action is the same that Plaintiff has repeatedly brought by his own admission, all seeking to enjoin foreclosure.

As already noted, the Chapter 11 Plan provides that creditors' rights as to the Property mortgages were undisturbed and all state court rights were reserved to same. *See generally* Ex. B. Plaintiff cannot selectively invoke the discharge element of the Confirmation Order while

simultaneously ignoring its language affirming the creditors' rights. Moreover, Plaintiff routinely blurs the lines between the relief he seeks as to himself personally and the rights provided by GEA Seaside's Confirmation Order. As the Bankruptcy Court held in its recommendation (later adopted) dismissing yet another of Plaintiff's foreclosure-based complaints, "a *pro se* plaintiff cannot bring a claim on behalf of a corporate entity." *Aberman v. Volusia Cnty., Fla.*, No. 6:25-CV-1416-WWB-DCI, 2025 WL 2955717, at *3 (M.D. Fla. Sept. 8, 2025), *report and recommendation adopted*, No. 6:25-CV-1416-WWB-DCI, 2025 WL 2955773 (M.D. Fla. Oct. 10, 2025) (recommending dismissal of the complaint to extent individual Plaintiff asserted claims on behalf of a corporate entity, and because the complaint was a "shotgun pleading" that failed to meet basic pleading requirements). At bottom, the doctrine of *res judicata* plainly bars the Complaint.

### 2.    *Collateral Estoppel*

In the event that *res judicata* does not apply, Plaintiff's claims should be dismissed under the doctrine of collateral estoppel because the issues arising from this action have already been decided by the Florida state and federal courts. "Collateral estoppel (also known as issue preclusion) is a doctrine that operates to preclude a party from relitigating an issue that has previously been decided." *Biogen Int'l GmbH v. Amneal Pharms. LLC*, 487 F. Supp. 3d 254, 258 (D. Del. 2020), *judgment entered*, 2020 WL 6277393 (D. Del. Sept. 22, 2020). Under the Third Circuit, collateral estoppel applies if: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (quotations omitted). The Third Circuit considers whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action," and whether the issue was

determined by a final and valid judgment.  *Id.*   Additionally, the Third Circuit has held that "principles of collateral estoppel apply in discharge proceedings in bankruptcy court." *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997) (citations omitted).

In the Complaint, Plaintiff admits on numerous occasions that he has presented issues concerning the Bankruptcy Cases to a panoply of courts and has failed to achieve the relief he seeks.  *See generally* Compl.   As discussed above, it is clear that this Court has no ties to the Florida Bankruptcy Cases nor the Properties (including the FHAM Properties).  Accordingly, Plaintiff should not be permitted to seek relief in Delaware, a venue that has no connection to (let alone jurisdiction over) his concerns.  Even more clear, Plaintiff should be collaterally estopped from raising issues that were already litigated and dismissed by the state and federal courts with proper jurisdiction over his concerns.  As a result, Plaintiff's Complaint against BNY should likewise be dismissed.

**D.   In rem Foreclosure Does Not Violate Discharge Injunctions.**

Even if it were possible to leave all of the foregoing aside (it is not), the Complaint is undone in a final respect.  In *Johnson v. Home State Bank*, the Supreme Court confirmed that section 524 provides that a bankruptcy discharge extinguishes only "the personal liability of the debtor," and that "the creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."  501 U.S. 78, 83 (1991).  Thus, any alleged discharge was simply a discharge of personal liability, meaning the *in rem* lien on the mortgaged properties survived, with creditors retaining their concurrent right to enforce that lien through foreclosure.  *See In re Golden*, 568 B.R. 838, 843 (Bankr. M.D. Ala. 2017) (collecting cases and confirming that "acts reasonably taken to service or foreclose a mortgage do not violate the discharge injunction") (citing *Johnson*, 501 U.S. at 82).

19

IV.    **THE ANTI-INJUNCTION ACT BARS THE COMPLAINT'S RELIEF.**

The Complaint asserts that relief under the Anti-Injunction Act ("**AIA**"), 28 U.S.C. § 2283, is available because it falls under the AIA's "authorized by Act of Congress" exception.  *See* Compl. at ¶¶ 38-42.  First of all, Third Circuit courts have applied the AIA to preclude federal injunctions against state court foreclosure proceedings.  *See, e.g.*, *Coppedge v. Conway*, 2015 WL 168839, at *1–2 (D. Del. Jan. 12, 2015) (denying TRO/PI on Rooker-Feldman and AIA grounds where plaintiff sought federal intervention following adverse state court ruling in foreclosure litigation).  More importantly, an exception under Section 524 would apply at most to the Florida Bankruptcy Court—i.e. the court that issued the Confirmation Order—not to this Court, which has no jurisdictional nexus to that order.

## CONCLUSION

For the reasons set forth herein, Defendant The Bank of New York Mellon Trust Company, National Association respectfully requests that the Court grant their Motion to Dismiss in full and dismiss all claims asserted against them with prejudice.

*[signature block follows]*

20

**SAUL EWING LLP**

/s/ Jazmine B. King
Evan T. Miller (#5364)
Jazmine B. King (#7415)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
Evan.Miller@saul.com
Jazmine.King@saul.com

*Counsel for Defendant The Bank of New York Mellon Trust Company, National Association, solely in its capacity as Trustee for First Horizon Alternative Mortgage Securities Trust 2006-AA6 and First Horizon Alternative Mortgage Securities Trust 2006-AA4*

Dated:  May 19, 2026

## CERTIFICATE OF SERVICE

I, Jazmine B. King, hereby certify that on May 19, 2026, I caused the foregoing *Defendant The Bank of New York Mellon Trust Company, National Association's, solely in its capacity as trustee for First Horizon Alternative Mortgage Securities Trust 2006-AA6 and First Horizon Alternative Mortgage Securities Trust 2006-AA4, Motion to Dismiss Plaintiff's Complaint* to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the forgoing to be served on May 19, 2026, upon the following in the manner indicated:

### VIA USPS FIRST CLASS MAIL AND ELECTRONIC MAIL

Jack Aberman
428 N. Peninsula Drive
Daytona Beach, FL 32118
flrealestatemgt@gmail.com

*/s/Jazmine B. King*
Jazmine B. King (#7415)

22